# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

KENNETH WAYNE MIKELL, SR.,   )
                                    )
      Petitioner,           )
                                    )
v.                              )   Case No. CV409-171
                                    )
TODD BRIAN, WARDEN, and    )
BRIAN OWENS, COMMISSIONER,  )
                                    )
      Respondents.       )

## <u>REPORT AND RECOMMENDATION</u>

Upon re-reference, this Report and Recommendation (R&R) streamlines and clarifies the prior R&R's reasons why Kenneth Wayne Mikell Sr.'s 28 U.S.C. § 2254 petition must be denied. Docs. 14 & 18.

## I. BACKROUND

As explained by the state appellate court, Mikell showed up at the rental home of Althea McDonald on a plumbing call, and while she was out of earshot, he sexually molested her minor daughter, "N.M." *Mikell v. State*, 281 Ga. App. 739, 740 (2006). When Mikell realized that N.M.'s younger sister was watching, he hurriedly left. *Id.* at 740-41. The girls

told their mother, the police were called, and they arrested Mikell. *Id.*

He was later

> indicted on one count of enticing a child for indecent purposes,
> three counts of child molestation, and one count of aggravated
> sexual battery. At his jury trial, both N.M. and J.M. testified about
> the incident, and the consistency of their accounts of what occurred
> was corroborated by their mother as well as the two investigating
> police officers. In addition, the State presented evidence of Mikell's
> South Carolina conviction for committing a lewd act upon a child
> and evidence of his sexual relationship with a different 12-year-old
> girl. At the trial's conclusion, Mikell was found guilty on the count
> of enticing a child for indecent purposes and on the three counts of
> child molestation and was sentenced to life imprisonment without
> the possibility of parole pursuant to O.C.G.A. § 17-10-7(c).
> Subsequently, he was appointed new counsel and filed a motion for
> new trial, which after a hearing was denied.

*Mikell*, 281 Ga. App. at 740-41.

On direct appeal, Mikell challenged the sufficiency of the evidence

and argued that the trial court erred in (1) admitting similar transaction

evidence, (2) allowing the State to make improper closing arguments, (3)

admitting the testimony of the victim and her younger sister, (4)

admitting hearsay testimony, and (5) denying his claims of ineffective

assistance of counsel against his trial counsel, William Lewis. *Mikell*,

281 Ga. App. at 739.

As previously detailed, doc. 14 at 3-4, the *Mikell* court denied relief,

281 Ga. App. at 739-49, as did the state habeas court. Doc. 12-4. Before

this Court Mikell, proceeding *pro se*, raises 19 exhausted claims. *See* doc. 14 at 7-10. Respondent has waived any exhaustion defense. *See* doc. 14 at 5 n. 2. Mikell's claims rest mostly on his contention that his appellate counsel, Martin Hilliard, was ineffective by failing to challenge, on ineffective assistance of counsel (IAC) grounds, his trial attorney Lewis's failure to litigate specific issues. By definition, then, he presents "double-layered" ineffective assistance of counsel (IAC) claims in that Hilliard cannot be found ineffective if Lewis was not. *See* doc. 14 at 6 n. 3 (IAC standards as affected by 28 U.S.C. § 2254 deference standards). So even though Mikell limits his IAC claims to Hilliard, doc. 1 at 7-22, 24-25; *see also* doc. 5-3 at 5-9 (state habeas petition), he must show that Lewis was ineffective, too.

At the same time, when Hilliard raised IAC claims against Lewis he was free to "winnow out" non-frivolous IAC claims without risking hindsight scrutiny now. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (The Sixth Amendment does not require an appellate advocate to raise every nonfrivolous issue, even if his client urges him to do so; instead an appellate advocate should exercise his professional judgment and select only "the most promising issues for review."). Mikell cannot accept the

benefit of representation on appeal without enduring some "winnowing" consequences. And on top of all that, he must make his IAC showing through the 28 U.S.C. § 2254(d) deference prism. *See* doc. 14 at 11 n. 5; *id.* at 14-20.

Respondent insists that Grounds 2, 8, and 15 are new but procedurally defaulted, doc. 9-1 at 7, while "the remaining ineffective assistance of appellate counsel claims lack merit." *Id.* at 11. As previously explained, claims 2, 8, and 15 are not defaulted, and Ground 19 -- ignored by respondent -- nevertheless is properly before the Court. Doc. 14 at 20-21. Pursuant to the single and double-layered claim analysis set forth at doc. 14 at 11 n. 4, the Court will, out of convenience, examine the merits of some underlying claims to discern whether, assuming counsel was deficient and such claim is reviewable *de novo* under § 2254's deference standards, doc. 14 at 14-20, they nevertheless would still fail.

## III. ANALYSIS

### A. Mikell's Alibi Defense

Many of Mikell's claims revolve around an alibi defense that he

argues Lewis should have but failed to advance on his behalf. At a hearing on Mikell's post-trial motion for new trial asserting Lewis's alleged ineffectiveness, Lewis insisted that there was no alibi:

> Q. What was the gist of [Mikell's] defense as you prepared to try his case?
>
> A. He -- he claimed he didn't -- obviously he said he didn't commit the acts. He wasn't denying that he was at the location where the events took place, but he says he did not do what the girls were alleging that he did. And he believed that the mother of the children had put the girls up to bringing these charge against him.
>
> Q. Did he make a claim concerning the mother as to why he thought she would put them up to make these false allegations?
>
> A. He told me that when he was at the house that she had made sexual advances toward him that he refused.
>
> *   *   *   *
>
> Q. Based on your discussion of this case with [Mikell] based on the discovery that you provided, is there any evidence from either of those two sources in your mind to raise an alibi defense?
>
> A. *No, he wasn't denying that he was there.*
>
> Q. He just denied having the sexual touching.
>
> A. That's correct.

Doc. 12-19 at 105 (emphasis added).

Mikell now denies that he was there.  Doc. 5 at 60[1] (insisting that he provided Lewis with his alibi evidence -- a business record showing that he was at another address working on a plumbing job "40 minutes after the [children's father's] 911 call was made.").  He admits that he was in the victim's home, but only on July 17, 2003 and not July 26, 2003, the day that the State claims the crimes were committed.  *Id.*; *see also* doc. 12-19 at 14 (Mikell citing his business records showing "I had got paid on the 23rd for that particular job I was accused of being on the 26th, which them records stated and proved that I was there on the 17th").  Lewis denies Mikell ever raised this defense with him.  Doc. 12-19 at 106-110.

The state courts have rejected Mikell's assertion that he told Lewis he wanted to press an alibi defense.  *Mikell*, 281 Ga. App. at 748 ("Furthermore, Mikell's trial counsel testified that he did not present an alibi defense because Mikell only denied molesting the victim and initially never denied his presence at the victim's house.  Indeed, trial counsel's recollection of this issue was supported at trial when the officer

---

[1]  For all documents cited herein, the Court has been citing to the electronic screen-page pagination electro-printed across the top of each page by the Court's CM/ECF software.  For this document, however, the Court is citing to the "hard-copy" pagination.

who interviewed Mikell prior to his arrest testified that Mikell admitted being at the victim's house on the day of the incident. As the trial court is entitled to resolve this factual conflict and credit trial counsel's testimony over that of Mikell, it did not abuse its discretion in finding that Mikell failed to show that his trial counsel's handling of his case was outside the bounds of reasonable professional conduct"). Because the record evidence supports that factual finding and Mikell has failed to rebut it with the clear and convincing evidence required by 28 U.S.C. § 2254(e)(1), this Court cannot disturb it. As will be seen, this finding sinks many of Mikell's claims here.

### B. Mikell's Claims

### Ground One

Mikell alleges ineffective assistance of appellate counsel because his appellate attorney (Hilliard) failed to allege that his trial attorney (Lewis) provided ineffective assistance of counsel by failing to object to the trial court's denial of adequate time to prepare for closing argument. Doc. 1 at 7, 30; doc. 5-5 at 7-9; doc. 11 at 3-4. Mikell says the trial court gave Lewis only ten minutes to prepare for it. Doc. 5 at 22 (recounting court colloquy). As was more fully detailed earlier, the record shows that

Mikell was given an *advantage*, not a disadvantage: It was the prosecutor who wound up being cut short as the trial court broke for lunch; Hilliard thus had the lunch hour to prepare, and did a credible job at that. *See* doc. 14 at 24-28. Hilliard had no duty to raise a baseless claim on appeal. Ground One therefore must be denied.

### Ground Two

Mikell again faults Hilliard for failing to argue that Lewis ineffectively failed to challenge the legality of the indictment. The state, he argues, withheld exculpatory evidence from the grand jury, and this would have not only substantially negated his guilt on the aggravated sexual battery charge but also removed the only alleged eyewitness to the acts of child molestation. Doc. 5 at 27-36; doc. 1 at 8, 30; doc. 5-5 at 9-14; doc. 11 at 4. Hilliard, however, was aware of this claim, found it meritless, and it in fact is. See doc. 14 at 28-29.

### Grounds Three and Five

In Grounds Three and Five Mikell raises a cluster of IAC claims that rest on a fairly complicated mass of interconnected statutory provisions. Respondent does not argue procedural default, only that the claims were decided against petitioner in state habeas court and thus

warrant § 2254(d) respect. Doc. 9-1 at 11-13. The state habeas court's "Final Order" lumps these claims in with Grounds 1-16 and 18, then credits Hilliard with making a good effort, then (without any analysis on any particular claim) summarily concludes that he was not ineffective because he was entitled to winnow out the strongest claims and kept Mikell informed of what he was doing. Doc. 12-4 at 3-7.

Though disappointing, this Court will accord that ruling § 2254(d) deference and *infer* here its "implied" reasoning. As explained earlier, doc. 14 at 30-53, the trial transcript reflects confusion by both the lawyers and the trial judge, and Mikell himself is understandably confused in articulating his claims. But they chiefly turn on trial counsel's failure to advise him of the consequences of rejecting a plea offer (Ground Three). Lewis, Mikell insists, failed to warn him of the consequence if Mikell rejected the then-offered plea: A mandatory sentence of life with no parole if convicted. Doc. 5 at 37-42; *see also* 12-19 at 53 ("A. He told me if I was to take it to trial, all he told me is I'd get a life sentence. He did not say nothing about no life without parole, sir."); *id.* at 54-55 (Mikell reminding Hilliard that Lewis admitted, at trial, to being unsure about the "without parole" consequence); *id.* at 60

(Lewis showed Mikell the State's recidivism notice and only said "life sentence"); doc. 12-19 at 101, 111 (Lewis cannot recall if he warned Mikell of "no parole" consequence ); *id.* at 113 ("but normally that's something that's done as a matter of course. . . .").

Hilliard raised the claim in Mikell's new trial motion and hearing, and asked this of Lewis:  "[Hilliard]: Was there any discussion that he faced the possibility without parole if the Court gave him a life sentence? [Lewis]: I'm only guessing again that that was reviewed with us prior to trial."  Doc. 12-19 at 103; *see also* doc. 12-15 at 48.  But Hilliard did not raise this issue on appeal, doc. 5-6 at 6-7, and the *Mikell* court, unsurprisingly, did not reach it.  281 Ga. App. at 747-49.  Before the state habeas court Mikell pursued Hilliard for this omission.  Doc. 5-5 at 14-15.

Ground Three nevertheless fails on several grounds, including the fact that a recidivist sentence is merely a collateral effect, which means Mikell did not have to be informed.  Doc. 14 at 44-45 (citing *Chatman v. State*, 306 Ga. App. 218, 221 (2010) (ineligibility for parole does not lengthen a sentence but is merely a legislatively imposed collateral effect on a sentence, and there is no requirement that a defendant be informed

of such a collateral consequence in deciding whether to accept a plea offer)). Hence, counsel could not be found deficient on that score.

In Ground Five Mikell complains that Lewis was ineffective for objecting to, and thus blocking, prior uncounseled guilty-plea-based convictions to enhance (into a recidivist result) his sentence. Doc. 11 at 5. Hilliard, in turn, was ineffective for failing to litigate an IAC claim against Lewis for failing to block prior guilty pleas that figured into Mikell's recidivist punishment. Doc. 5 at 52; *see also* doc. 5-5 at 20.

Mikell also faults Lewis (thus Hilliard for not challenging Lewis) for fundamental ignorance of the recidivist sentencing aspect of the case against Mikell. As this Court previously explained, however, even the trial judge misunderstood the operation of the statutes, doc. 14 at 44, and the record supported the prosecution's showing of three prior -- and valid -- felonies, per *Nash v. State*, 271 Ga. 281 (1999), doc. 14 at 49-53, which Mikell has failed to show to be legally deficient. Grounds Three and Five thus must be denied.

### Grounds Four and Fourteen

In Ground Four Mikell contends that Hilliard was ineffective for failing to argue that Lewis failed to object to improper portions of the

state's closing argument -- specifically, the prosecutor's alleged injection of matters not in evidence and his "future dangerousness." That claim fails under the state and federal harmless error doctrines. *See* doc. 14 at 53-57. The same must be said for Ground Fourteen, based on the prosecutor's "future dangerousness" argument. *See* doc. 14 at 56-57.

**Ground Six**

In Ground Six, Mikell again faults Hilliard for failing to show that Lewis was ineffective in failing to understand how to cross-examine a child witness in a child molestation case. Doc. 1 at 12, 30; doc. 5 at 55-60; doc. 5-5 at 25-30; doc. 11 at 6. As explained earlier, doc. 14 at 58-60, Mikell's entire claim here is premised on a showing -- which he has *not* made -- that the waived appellate claim would have been successful, and that Lewis's at-trial exclusion efforts would have been successful. Again, it is Mikell's burden to prove his entitlement to federal habeas relief. This he has not done, so Ground Six should also be denied.

**Grounds Seven and Eight**

In Ground Seven, Mikell alleges that Hilliard was ineffective "for failing to raise a Due Process Violation on appeal when the state failed to prove every fact necessary of proof beyond a reasonable doubt." Doc. 5 at

61; doc. 1 at 13, 30-31; doc. 11 at 6.  This is really a rehash of Mikell's "alibi" claim, wherein he claims he was somewhere else at the time. Doc. 5 at 61 (recounting his trial "rebuttal" evidence showing this, plus the prosecutor's closing argument comment that "the dates in this indictment aren't material," doc. 12-18 at 108).  This ground is meritless, as all Mikell has done is collect cites to evidence he deems favorable to him and insist that no rational jury would have come up with anything but a reasonable doubt.  *Id.* at 61-66.  He also ignores the thick layer of inculpatory evidence accurately summarized by the *Mikell* court.  It was for the jury to sort that out, and they did.

Ground Eight is also a re-run of Mikell's alibi claim -- that his lawyers should have run with it but did not, including their failure to adduce evidence, request a charge, argue it at trial and on appeal, etc. Doc. 5 at 68-73; doc. 1 at 14-15, 31; doc. 5-5 at 25-27; doc. 11 at 7.  Thus, this Ground must also be denied.  *See* doc. 14 at 61-62.

**Ground Nine**

In Ground Nine Mikell faults Hilliard "for failing to raise a claim of Due Process when [Lewis] failed to appeal the denial of the Trial Court to grant a bond for [Mikell] so that the [*Mikell*] court could have

determined whether th[ere] was an abuse of discretion." Doc. 5 at 74-76; doc. 1 at 15, 31; doc. 5-5 at 27-29; doc. 11 at 7. Assuming *arguendo* that Mikell could satisfy the *Strickland* deficiency prong, he could not meet its prejudice prong, because such a claim would have been deemed moot on appeal. *See* doc. 14 at 62-63. Hence, this claim also must be denied.

**Ground Ten**

Ground Ten is yet another double-edged IAC claim -- that Hilliard should have shown Lewis was ineffective for failing "to object or move for a mistrial when the Prosecutor bolstered and/or vouched a key state witness' testimony before the jury, stating on the trustworthiness and veracity of the witness, [and] that left a harmful violation to [Mikell's] Fifth and Sixth Amendment rights to go unchallenged on the direct appeal." Doc. 5 at 78-83; *see also* doc. 1 at 16, 31; doc. 5-5 at 29-33; doc. 11 at 7. As the Court previously explained, doc. 14 at 63-64, this claim founders on the same prejudice analysis noted *supra* (i.e., even if Hilliard competently performed and prevailed on the IAC claim against Lewis, the appellate court would have concluded no prejudice because, given the overwhelming evidence against Mikell, the outcome would not have been different), so it must likewise be denied. For that matter, many of the

comments of which Mikell complains stepped over no boundary line, but in fact were a fair response to matters Mikell raised in defense (e.g., the State's failure to prove the offense date with sufficient specificity).

**Ground Eleven**

In Ground Eleven Mikell again faults Hilliard, this time for failing to properly apply the *Strickland* standards on appeal. Doc. 5 at 84-88; doc. 5-5 at 33-34; doc. 1 at 17, 31; doc. 11 at 8. This is a make-weight argument at best, generically restating his IAC claims and pretending that Hilliard failed to cite, much less argue, the *Strickland* two-part test. In fact, he did. *See* doc. 5-6 at 12-20.

**Ground Twelve**

Hilliard once again is challenged as ineffective in Ground Twelve, again for failing to raise an IAC claim against Lewis. Doc. 5 at 90. Lewis, Mikell contends, "failed to file a suppression motion or limine against the out-of-court testimonial statement of a state witness who was not interviewed prior to trial or not proven to be unavailable[,] thus making the statement inadmissible and highly prejudic[ial] to the case[;] this therefore violated [the] Fifth, Sixth and Fourteenth [Amendments]." *Id.* As he argued before the state habeas court, the focus here was on

preventing admission of "the out of court testimonial statement of Lori Parker when [Lewis] didn't interview [her] in a pretrial investigation which was inadmissible evidence by being a testimonial out of court statement, which shows an ineffective claim violation and due process violation." Doc. 1 at 31; *see also id.* at 18; doc. 5-5 at 34-37; doc. 11 at 8.

As explained earlier, doc. 14 at 65-67, this evidence was too inconsequential to surmount the harmless error and IAC prejudice standards, and Mikell showed no Confrontation Clause claim either.

### Ground Thirteen

In yet another double-layered IAC claim, Mikell again faults Hilliard for failing to show that Lewis was ineffective for failing to block the children's hearsay statements against him. As previously explained, doc. 14 at 67-70, Mikell has failed to show that the state court's ruling against him is unreasonable under § 2254(d). For example, he insists that Lewis was *Strickland*-deficient because, among other things, he "[f]ailed to gain background information in the pre-trial investigation of the Police Reports to see the inconsistenc[ies]. . . ." Doc. 5 at 107. Yet, Mikell does not state *what* that information might be, and speculation simply will not figure into a habeas claim. *Brewer v. Landrigan*, ___

U.S. \_\_\_, 131 S. Ct. 445, 445 (2010).  Finally, much of Mikell's argument here is simply that: argument.  No fundamental error occurred here, which is a pre-requisite for an IAC claim (i.e., Mikell must show that his lawyer could have but failed to prevent fundamental, outcome-altering error from infecting his trial).

### Ground Fifteen

In his next double-layered IAC claim, Mikell faults Hilliard for failing to raise Lewis's failure "to have any pre-trial preparations, such as not preparing [Mikell] to testify in his defense, until he was asked at the 11th hour of trial if he wanted to, and with a consultation that was only seconds long."  Doc. 5 at 121. Here Mikell incorporates other claimed deficiencies, including things like Lewis's failure to pursue Mikell's alibi defense, fully investigate the defense pretrial, and "fully understand" the recidivist law applied against Mikell.  Doc. 1 at 21, 32; doc. 5-5 at 42-44; doc. 11 at 9.  As earlier explained, doc. 14 at 70-72, this "not enough" based claim fails because it merely replays many of the earlier mentioned claims which, since they are denied *supra*, now carry no weight.

**Ground Sixteen**

In his next double-layered IAC claim, doc. 5 at 127-131; doc. 1 at 22, 32; doc. 5-5 at 45-48; doc. 11 at 9-10; doc. 12-6 at 72, Mikell faults Hilliard for failing to show that Lewis was deficient by failing "to object to the state introducing evidence of what a child who witnessed the molestation said to a police officer." Doc. 5-5 at 45. The record, as recounted earlier, doc. 14 at 72-74, shows that state law permitted this testimony and thus Lewis could not be shown to be deficient. Thus, Hilliard, in turn, could also not be found deficient.

**Ground Seventeen**

In Ground Seventeen Mikell contends that "[t]he evidence is insufficient to sustain the conviction." Doc. 5 at 133; *see also* doc. 1 at 23, 32; doc. 5-5 at 48; doc. 11 at 10. This is just a roll-up argument, wherein Mikell recapitulates all of his alibi and other pro-defense evidentiary interpretations, then fastens them to his challenge to the state's evidence against him. The *Mikell* and state habeas courts' evidentiary recitation have not been shown to be unreasonable. Nor has their application of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), been shown to be "contrary to, or involved an reasonable application of clearly

established Federal law. . . ." 28 U.S.C. § 2254(d)(1).

**Ground Eighteen**

In his next double-layered IAC claim, Mikell faults Hilliard for failing to attack Lewis over Lewis's failure "to gain any knowledge of the favorable and material witnesses in favor of the Defence [,and] that violated the Petitioner's Sixth Amendment right to the Compulsory Process, A Fifth, and Fourteenth Amendment violation to Due Process, and a violation of the Sixth Amendment to an Effective Assistance of Counsel." Doc 5 at 137; *see also* doc. 1 at 24, 32; doc. 5-5 at 48-53; doc. 11 at 10. This is a rehash of Mikell's "alibi" claim involving, *inter alia*, the "Laurie Parker" evidence establishing that he was somewhere else at the time of the crimes. Doc. 5 at 137-148. This claim is baseless, as the state courts' factual finding that Mikell never urged Lewis to pursue an alibi defense is not an unreasonable determination within the meaning of 28 U.S.C. § 2254(d)(2), nor disturbable under § 2254(e)(1).

**Ground Nineteen**

In his final ground, Mikell again challenges Hilliard's effectiveness for failing to challenge Lewis's effectiveness, this time for failing to object to the children's wearing of "Girl Scout Uniforms" before the jury. Doc.

5 at 149-154; doc. 1 at 25, 32; doc. 5-5 at 53-54; doc. 11 at 10. This claim fails because Mikell can show no *Brecht*-level harmless error, and thus no *Strickland* prejudice. *See* doc. 14 at 75-76.

## IV. CONCLUSION

Kenneth Wayne Mikell, Sr.'s 28 U.S.C. § 2254 petition must be **DENIED**. Doc. 1. Applying the Certificate of Appealability ("COA") standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this __26th__ day of January, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA